NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0603n.06

No. 07-6087

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Aug 26, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JOHN FORD, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, NORRIS, and GILMAN, Circuit Judges.

PER CURIAM. John Ford, a federal prisoner represented by counsel, appeals a district court judgment sentencing him to sixty-six months of imprisonment and three years of supervised release for violating 18 U.S.C. § 666. Finding no error, we affirm.

On April 27, 2007, a jury convicted Ford of "Bribery Involving Federal Programs" in violation of § 666. Ford's advisory sentencing guideline range was seventy-eight to ninety-seven months. Ford objected to his presentence report, arguing that he should not receive a two-level enhancement for multiple bribes under USSG § 2C1.1(b)(1). Ford also objected to a two level enhancement for obstruction of justice pursuant to USSG § 3C1.1. The district court overruled Ford's objections.

In his timely appeal, Ford continues to challenge the two enhancements. The case has been held in abeyance until we issued our en banc decision of *United States v. White*, 551 F.3d 381 (6th Cir. 2008), *petition for cert. filed* (U.S. Mar. 24, 2009) (No. 08-9523).

We review sentences imposed by the district court for reasonableness. *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007) (citing *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006)). Reasonableness review has both a procedural and a substantive component. *See Gall*

*v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007). Thus, when reviewing a district court's sentencing determination, we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597.

"Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* District courts are charged with imposing "a sentence sufficient, but not greater than necessary" to fulfill the purposes of sentencing in § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) (internal quotation marks omitted). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 128 S. Ct. at 597. In this circuit, we apply a rebuttable appellate presumption of reasonableness to a sentence that falls within a properly calculated Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir.), *cert. denied*, 129 S. Ct. 68 (2008) (acknowledging that *Rita v. United States*, 551 U.S. 338, ___, 127 S. Ct. 2456, 2462, 2467 (2007), gives courts of appeals the option of applying a presumption to within-Guidelines sentences). That does not mean, however, that a sentence outside of the Guidelines range – either higher or lower – is presumptively unreasonable. *Rita*, 127 S. Ct. at 2467 ("The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness."). Rather, such a sentence carries no legal presumption. *Id.*

Ford was indicted by a federal grand jury on May 25, 2005. Count one of the indictment charged Ford with attempting to obstruct, delay, and affect commerce by means of extortion in violation of 18 U.S.C. § 1951; count two of the indictment charged Ford with interference with commerce by threat or violence in violation of 18 U.S.C. § 666. Counts three, four, and five of the

indictment charged Ford with intimidation or force against witnesses in violation of 18 U.S.C. § 1512(b)(3).

The evidence at trial showed that the FBI created a sting operation called "Operation Tennessee Waltz" to investigate corruption in the Tennessee legislature. Ford, at the time a member of the Tennessee Senate, accepted one $10,000 and numerous $5,000 bribes to support legislation in favor of a fictitious company set up by the FBI called E-Cycle Management. The evidence also showed that Ford made threats against an undercover FBI agent and a private party recruited by the FBI to be part of the operation.

A jury found Ford guilty of the bribery charge. A mistrial was declared on the obstruction charge of the indictment, and was subsequently dismissed upon motion of the United States. The jury found Ford not guilty on the remaining counts of the indictment.

Prior to sentencing, Ford filed objections to the two-level enhancement contained in Ford's presentence report. The enhancement, made pursuant to § 2C1.1(b)(1), was added because Ford received multiple bribes.

After hearing arguments on the matter, the district court determined that the payments made to Ford on behalf of E-Cycle constituted multiple bribes to Ford. The court found that the payments made to Ford were not installments towards the payment of a larger, previously agreed upon amount. The court noted that the payments were made on a monthly basis, and sometimes more frequently. Further, the court found that the payments were generally made in connection with a specific action by Ford, such as redrafting or amending a bill, or withdrawing the bill for consideration by the state legislature. The court disagreed with Ford's argument that the payments constituted a single bribe because they were all made for a single benefit, that benefit being the introduction of specific legislation.

The district court ruled that the agreement in which Ford would receive benefits from the public stock offering by E-Cycle, if the legislation passed, would qualify as a payment separate from

the monthly payments. This payment also established a basis for the enhancement under § 2C1.1(b)(1).

The court also ruled on Ford's objections regarding the two-level enhancement for obstruction of justice contained in the presentence report pursuant to § 3C1.1. The presentence report relied on the threats contained in the recorded conversations between Ford, the private party, and the undercover agent, as well as the testimony regarding the threats.

The United States played portions of the audio recordings introduced during the trial. The first recording concerned the threats made to the private party during a meeting in Ford's office on February 3, 2005. The United States also played a recording that concerned the threat to the undercover agent made by Ford.

Ford argued that this conduct was the basis for the charges that Ford had been acquitted of during trial, counts three through five of the indictment. Therefore, these actions should not be used to enhance Ford's guidelines calculations.

The district court noted that the standard that was to be applied at sentencing was the preponderance-of-the-evidence standard. The court stated that the provisions for an enhancement under § 3C1.1 indicated that obstructive behavior can be varied. The court described the differences between the enhancement provision of § 3C1.1 and the obstruction statute under which Ford was acquitted. The court ruled that the evidence presented at trial established the threats by a preponderance of the evidence and, therefore, the enhancement was applicable.

Section 2C1.1(b)(1) imposes a two-level sentence enhancement for receipt of "more than one bribe or extortion." The Sentencing Commission's commentary provides that *"[r]elated payments that, in essence, constitute a single incident of bribery or extortion (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts."* USSG § 2C1.1 cmt. n.2.

In making its determination, the district court relied first on *United States v. Canestraro*, 282 F.3d 427 (6th Cir. 2002), a Sixth Circuit case involving multiple gratuities under an analogous Sentencing Guidelines provision. USSG § 2C1.2(b)(1). There the court held that the multiple payments did constitute multiple gratuities that justified the imposition of the enhancement. *Id*. at 431-32.

Second, the district court relied on the Second Circuit's interpretation of § 2C1.1 in *United States v. Arshad*, 239 F.3d 276 (2d Cir. 2001). The *Arshad* court identified several factors commonly applied to determine if a payment, or payments, constitute multiple bribes, including: 1) whether "the payments were made to influence a 'single action'," *id.* at 280 (citing *United States v. Middlemiss*, 217 F.3d 112, 124 (2d Cir. 2000); *United States v. Martinez*, 76 F.3d 1145, 1153-54 (10th Cir. 1996)); 2) "whether the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes," *Arshad*, 239 F.3d at 281-82 (citing *Middlemiss*, 217 F.3d at 124; *Martinez*, 76 F.3d at 1153; *United States v. Morales*, 11 F.3d 915, 917 (9th Cir. 1993)); and 3) "whether the method for making each payment remains the same." *Arshad*, 239 F.3d at 282 (citing *Morales*, 11 F.3d at 917).

The district court's enhancement of Ford's sentence using § 2C1.1(b)(1) was not erroneous. As the district court noted, the evidence presented at trial showed that the undercover agent and Ford had not established a fixed sum that Ford would receive for the legislation. The payments made to Ford were made in a manner to clearly influence more than one event. The evidence establishes that each payment was accomplished by another action by Ford in his authority as a state senator. The payments were made to Ford for 1) drafting the legislation; 2) placing the legislation before the committee; 3) amending the legislation; 4) withdrawing the legislation; and 5) delaying the legislation, all for the purpose of benefitting a fictitious, corrupt corporation. In addition to the periodic payments, which establish that there was no regular schedule of payments and that there was

no agreed final fixed amount, Ford was given access to the corporation's initial public stock options once the legislation was passed. This second method of receiving payment, under *Arshad*, further establishes that Ford received multiple bribes. *Arshad*, 239 F.3d at 282; *see also Canestraro*, 282 F.3d at 432 (holding that a "success fee" also constitutes a separate gratuity). As the district court's application of § 2C1.1(b)(1) is procedurally and substantively reasonable, *Gall*, 128 S. Ct. at 597, the argument does not warrant the reversal of the district court's sentence.

Ford next contends that the district court erred by granting a two-level increase under § 3C1.1 for threatening and intimidating the private party and the undercover FBI agent because the jury had found Ford not guilty of the obstruction charges. The district court noted at sentencing that even though Ford was not convicted by the jury of the intimidation charges, the preponderance of the evidence standard applies in sentencing proceedings. Based upon the evidence at trial, the court concluded that Ford had engaged in obstruction and that the enhancement of § 3C1.1 applied. Ford conceded in his brief that our decision in *White* would resolve this issue. In *White*, we held that so long as the defendant receives a sentence that is at or below the statutory limit established by the jury's verdict, the district court does not violate a defendant's right to a jury trial by examining other facts, including acquitted conduct, when determining a sentence. *White*, 551 F.3d at 385. The statutory maximum that Ford faced was ten years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment. Because Ford's sentence was well below the statutory maximum, under *White*, the district court's implementation of § 3C1.1 does not render Ford's sentence procedurally or substantively unreasonable.

Accordingly, we affirm.